(No. CA84-09-066 — Decided
July 31, 1985.)

APPEAL: Court of Appeals for
Clermont County.

*George E. Pattison,* prosecuting attorney, *Gregory Chapman* and *D. Vincent Farris,* for appellee.

*Edward J. Collins* and *Jim Rimedio,* for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Clermont County.

Defendant-appellant, Katherine Rhea Courtney, was convicted of aggravated murder with a firearms specification as a result of the August 25, 1983 shooting death of Robert Michael Dean. The evidence presented at trial tended to show that appellant and the deceased were co-workers at the General Motors Assembly Plant in Norwood, Ohio, and that they had maintained a dating relationship for approximately seven months prior to the shooting. During this seven-month period, Dean had apparently told appellant that he was residing with a niece named Marilynn when he was in fact residing with his former wife, Peggy Dean. Dean and his former wife had obtained a dissolution of marriage during 1982 but continued to live together until Dean's death.

On the day of the shooting, Dean was suffering from a severe headache and appellant accompanied him on a visit to a doctor prior to reporting to work at General Motors at 3:56 p.m. Dean did not go to work due to the headache. Although her shift ran from 4:18 p.m. on August 25, 1983 until 12:48 a.m. the next day, appellant left work at 8:36 p.m. to check on Dean. Upon her arrival at Dean's Goshen Township, Clermont County, Ohio, residence, appellant was greeted by a dark-haired woman whom she assumed to be Dean's niece, Marilynn. Upon inquiry, however, the woman responded: "No, I'm Peggy Dean." Dean then came out of the house and he and appellant conversed for a short period of time, after which appellant drove to her home, located minutes away in Loveland, Ohio. Peggy Dean testified that when her former husband re-entered the house following this conversation he appeared visibly upset.

After arriving home, appellant telephoned Pansy Cowen, Dean's adult daughter, and told her about the encounter with Peggy Dean. Cowen testified that appellant seemed very upset and that appellant demanded an explanation from her as to what was going on between Dean and his former wife.

Cowen stated that she advised appellant to talk things over with Dean and terminated the conversation.

Appellant also discussed the situation with her own daughter, Micha Porter, and Micha's fiancee, Jamie Ertle, who were both present at her home upon or shortly after her arrival. At approximately 10:30 p.m., appellant asked Ertle to drive her over to Dean's house so that she could talk to him. Ertle agreed, and he, Porter and appellant subsequently drove over to the Dean residence in appellant's automobile. Ertle was at the wheel; appellant was in the front passenger's seat and Porter was sitting on the console between them.

As Ertle pulled into the Dean driveway, appellant requested that he go to the door and ask for Dean. Ertle exited the vehicle and began to walk toward the front door of the residence, but Dean was on his way out of the door as Ertle approached it. Ertle then returned to the car and appellant exited the vehicle. Appellant and Dean began talking a few feet in front of the vehicle with Dean facing the vehicle and appellant facing Dean with her back toward the car.

Ertle and Porter, who remained inside the vehicle during the subsequent five-minute conversation between Dean and appellant, testified that they could not discern what the two were saying to each other, but remember hearing a "click" which both described as the sound of a gun being cocked. Approximately thirty seconds later, a shot was fired and Dean began walking toward the house holding his chest. At that time he had a .22 caliber pistol in his left hand which was later determined to belong to appellant. Appellant was following closely behind Dean as he walked and appeared to be attempting to support him with her hands and arms. Dean staggered toward the front door of the house and fell inside the front room of the residence. He then fell back outside the house and died on the front porch from loss of blood.

As Dean was walking toward the house after being shot, Ertle and Porter exited the vehicle in which they had been seated and approached Dean and appellant. Ertle found the .22 caliber gun just inside the doorstep of the residence and picked it up and threw it toward a neighbor's yard. Ertle also noticed a .38 caliber pistol sticking out of Dean's back pocket. He removed the gun from the pocket and threw it in another direction. Porter went to her mother, who was kneeling over Dean's body calling his name. Peggy Dean, who had come to the front door upon hearing the shot, telephoned the Batavia Police Department and requested a life squad.

Ertle and Porter, unable to persuade appellant to leave Dean's side, then left the scene in appellant's car and drove back to appellant's residence in Loveland. Shortly afterward, appellant left the scene on foot; she was apprehended by police about one-half mile from the Dean residence.

Following her conviction, appellant was sentenced to a term of life imprisonment with no possibility of parole for at least twenty years for the aggravated murder count against her and to a term of actual imprisonment of three years, to be served consecutively with, and prior to the sentence for aggravated murder, for the firearms specification. Appellant thereafter timely filed notice of the instant appeal, and now presents the following four assignments of error for our consideration:

Assignment of Error No. 1

"The trial court erred to the prejudice of defendant/appellant by permitting the jury to consider expert testimony which was based on a possibility and not a probability."

Assignment of Error No. 2

"The trial court erred to the prejudice of defendant/appellant in failing to

grant her Rule 29(A), (B) & (C) motions for acquittal."

Assignment of Error No. 3

"The jury verdict and judgment was [*sic*] manifestly against the weight of the evidence."

Assignment of Error No. 4

"The trial court erred to the prejudice of defendant/appellant in sentencing her to life with no parole for at least twenty (20) years and consecutive prior thereto an actual imprisonment of three (3) years for the use of a firearm."

In her first assignment of error, appellant contends that the trial judge should have stricken testimony by Ohio Bureau of Criminal Investigation firearms expert Ronald Dye because such testimony was based on possibility as opposed to probability. We do not agree.

The disputed testimony concerns whether the bullet that killed Dean was fired from the .22 caliber pistol found on the scene and identified as belonging to appellant. Dye testified that the lands and grooves found in the bullet that caused Dean's death matched the land and groove characteristics of the .22 caliber gun. He further stated that the bullet and the gun both exhibited a "right twist" characteristic, which is the direction of spin imparted upon the bullet by the lands and grooves inside the gun barrel. However, Dye also advised the jury that he could not find enough other matching characteristics to positively match the bullet back to the gun. Dye therefore concluded that while it was not possible, based on the tests performed, to positively say whether or not the particular bullet was fired from the particular gun, it was possible to conclude, based upon the corresponding land and groove widths and the direction of the "twist," that the bullet *could* have come from appellant's gun.

As a general rule, Ohio courts have required that an expert testifying at trial express opinions based on nothing less than "reasonable certainty" or "probability." See *State* v. *Holt* (1969), 17 Ohio St. 2d 81 [46 O.O.2d 408]. Appellant argues that Dye's testimony as related above should have been disallowed below because Dye was unable to state with reasonable certainty that the death bullet was fired by appellant's gun. In support of this position, appellant cites *Holt, supra.* In *Holt,* the Ohio Supreme Court found that opinion testimony by an expert witness who had performed a "neutron activation analysis" identification/comparison procedure on two pubic hair samples was inadmissible because the expert could only state that the samples were "similar and likely to be from the same source." The court found that the word "likely" was not equivalent to the words "reasonably certain" or "probable" and that the testimony should therefore have been stricken.

The testimony at issue in the instant appeal, however, is different from the neutron activation analysis testimony in *Holt, supra,* because while Dye could not positively match the bullet that killed Dean back to appellant's gun he could, based on his comparison of the lands and grooves, say with reasonable scientific certainty that the bullet could have been fired from appellant's gun. This opinion was based on accepted scientific identification procedures and was certainly circumstantially relevant for the purpose of proving whether appellant's gun was involved with Dean's death. Of course, Dye's testimony alone would not be sufficient to prove that appellant's gun fired the death bullet because it does not rule out all other weapons, but the sufficiency of Dye's testimony is of no moment when considering its admissibility. See Giannelli, Ohio Evidence Manual (1982) 70, Section 702.05.

The case at bar is almost on all fours with *State* v. *Bayless* (1976), 48 Ohio St. 2d 73 [2 O.O.3d 249], vacated in part on other grounds (1978), 438 U.S. 911. In

*Bayless, supra,* a ballistics expert testified that bullets recovered from the bodies of certain murder victims were so mutilated that he was unable to determine whether they were fired from a gun taken from the defendant. However, the expert was able to testify that the bullets were fired from a gun having similar characteristics, and that the bullets were similar to bullets found in the gun. The Supreme Court found that the expert's testimony was admissible, distinguishing *Holt, supra,* on the basis that the expert did not venture an opinion as to the possibility that the bullets were fired from the defendant's gun, whereas the expert in *Holt* did attempt to assess the probability that the subject pubic hair samples came from the same source.

The testimony at issue herein more closely approximates the facts of *Bayless* than the facts of *Holt* because Dye, like the ballistics expert in *Bayless,* did not attempt to speculate as to the probability that the gun belonging to appellant fired the bullet which killed Dean. He merely related that while the scientific tests performed upon the bullet and the gun could not match the particular bullet with the particular gun, the tests did show that the gun could possibly have fired the bullet that caused Dean's death. Therefore, we find that Dye's testimony was properly admitted below based on the precedent established by *Bayless, supra,* and that *Holt, supra,* is distinguishable from the case at bar for the same reasons that it was distinguishable in *Bayless.* Accordingly, appellant's first assignment of error is without merit.

In her second assignment of error, appellant contends that the trial court erred in failing to grant her Crim. R. 29 motions for acquittal made at the close of the state's case, after appellant presented her defense, and with her post-verdict motion for new trial. We again find ourselves unable to agree with her position.

A motion for acquittal should be granted only "if the evidence is insufficient to sustain a conviction * * *" for the offense or offenses with which the defendant is charged. Crim. R. 29(A). "[A] court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261 [9 O.O.3d 401], syllabus.

Appellant was convicted of aggravated murder per R.C. 2903.01(A), which states that "[n]o person shall purposely, and with prior calculation and design, cause the death of another." A careful review of the record reveals that the evidence presented by the state was such that reasonable minds could differ as to whether each of the elements of the offense were proved beyond a reasonable doubt. The state presented a significant amount of evidence tending to show that appellant was having an affair with Dean, and discovered during a visit to Dean's residence on the evening of August 25, 1983, that Dean was in fact living with his ex-wife. Appellant, according to evidence presented by the state, became very upset and returned to the Dean residence later the same evening with a .22 caliber pistol and used it to kill the deceased. The mental elements of the charged offense, "purposely" and "prior calculation and design" were necessarily established by circumstantial evidence, but the record indicates that sufficient evidence was presented to enable reasonable minds to conclude that these elements had been proven beyond a reasonable doubt.

Accordingly, we find that the court below properly overruled each of appellant's motions for acquittal. Her second assignment of error is therefore without merit and must be overruled.

Appellant's third assignment of error asserts that the verdict below was contrary to the manifest weight of the evidence presented. On appeal, a reviewing court assessing whether a conviction is supported by the weight of the evidence must limit its inquiry to a determination of whether sufficient evidence was presented which, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O.3d 340]. We find that the evidence presented by the state of Ohio in the case *sub judice* satisfies the above requirement, and accordingly find appellant's contention otherwise to be without merit.

Appellant's principal argument with respect to the issues of the manifest weight of the evidence focuses on the circumstantial evidence presented by the state to prove that appellant was in possession of the .22 caliber pistol that was used to kill Dean and to prove that appellant actually fired the pistol. Appellant notes that her daughter, Micha Porter, testified at trial that appellant's gun had once been in Dean's possession and that there were no witnesses who were able to testify that the alleged murder weapon was ever in appellant's possession on the day Dean was shot. In support of her position, appellant cites *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, which states in its syllabus that where circumstantial evidence is relied upon to prove an essential element of a crime, such evidence must be irreconcilable with any reasonable theory of innocence in order to support a finding of guilty.

With regard to Porter's testimony that Dean once had possession of appellant's gun, which included testimony to the effect that Porter had not personally seen the gun for approximately three years, we note that Porter was the only witness who made these statements and her credibility, being the defendant's daughter, may well have been suspect. Further, Dean's former wife, Peggy Dean, testified that she had never seen appellant's gun prior to the night of her former husband's death. Based on this evidence, the jury could reasonably have concluded that it was unlikely that Dean would have been carrying two guns on his person when he stepped outside his home on the evening of August 25, 1983 to talk with appellant. Indeed, a more likely scenario would have Dean and appellant each carrying a single gun. We therefore find that sufficient evidence was presented which, if believed, would convince the average juror that appellant was in possession of the .22 caliber pistol on the night of Dean's death. See *Eley, supra.*

Although the state failed to produce any witnesses who actually saw appellant shoot Dean, it did produce a significant amount of circumstantial evidence that leads inescapably to this conclusion. For example, an examination of Dean's left hand revealed the presence of a brown or black smudge between the thumb and index fingers which, according to the testimony of Dr. Paul Jolly, Hamilton County Chief Deputy Coroner, was probably caused by gas being expelled from a fired revolver. The evidence further established that the alleged murder weapon did not leave such a smudge on the hand of a person firing it, indicating that Dean's hand was in front of or to the side of the gun when it was fired, not in back of it.

Examination of the deceased also revealed the presence of unburned flecks of gunpowder on his left arm and gunpowder residue on the front of his shirt near the point where the bullet entered his chest. Firearms expert Dye testified that these findings were consistent with a gun being fired at the deceased from a distance of more than one but not more than four feet away. The findings were most consistent with a test firing from a distance of two feet.

All of the above findings are consistent with a sequence of events in which the deceased was attempting to disarm his assailant at the time he was shot. As there is no dispute that appellant was the only person within four feet of Dean when the fatal shot was fired, there can be no conclusion other than one finding that appellant fired the fatal shot.

It therefore appears that the circumstantial evidence presented below was of a nature sufficient to exclude any reasonable theory of innocence. See *Kulig, supra*. Accordingly, appellant's conviction was not contrary to the weight of the evidence, and her third assignment of error must be overruled.

Appellant's fourth and final assignment of error asserts that the language in paragraph (A)(2) of R.C. 2929.71, which mandates an additional penalty of three years of actual incarceration for offenses involving a firearm, is void for vagueness and impossible to apply. The disputed language states that the additional three-year term "shall be served consecutively with, and prior to * * *" the sentence imposed for the crime committed. Appellant contends that the terms "consecutively" and "prior to" are contradictory because consecutive means "following" and "prior to" means "before." Therefore, it is appellant's position that if the statute were to be applied as written, the mandatory three-year term would have to be served twice: once "prior to" the sentence imposed for the crime committed and once "consecutively" with or "after" such sentence.

We find this reading of the statute to be strained and unreasonable because it is clear from even the most cursory reading of the statute that only *one* additional three-year term of actual incarceration shall be imposed for the commission of an offense with a firearm.

Therefore, a common-sense reading of the words "consecutively with, and prior to" leads to the inevitable conclusion that the words "prior to" were intended to modify the word "consecutively." Any other reading would, as appellant suggests, require that two additional three-year terms of actual incarceration be imposed. Since the word "consecutively" means to follow in series (see Webster's Third New International Dictionary [1981]), the words "and prior to" necessarily modify the "consecutive" term so as to dictate that the member of the series to be placed "consecutively with" another member of the series be instead placed *before* the other member. In terms of the statute in issue, this means that the three-year term of actual incarceration must be served as a separate unit prior to the sentence imposed for the crime committed. We believe that this is the reading that the legislature intended, as it eliminates the possibility that the mandatory additional three-year term would be ordered to run concurrently with the defendant's other sentence or sentences, or ordered to be served after the other sentence or sentences had been served.

Accordingly, we find that appellant was properly sentenced below, and her fourth assignment of error is therefore overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

KOEHLER, P.J., JONES and HENDRICKSON, JJ., concur.